**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

and

**Revonda E. Mickle, Plaintiff–Intervenor,**

v.

**BOJANGLES RESTAURANTS, INC., Defendant.**

**No. 1:02 CV 00774.**

United States District Court, M.D. North Carolina.

Sept. 22, 2003.

Gwendolyn Young Reams, Washington, DC, Lynette A. Barnes, Mindy E. Weinstein, Bobby C. Simpson, Kirk J. Angel, Charlotte, NC, Kerith Cohen, Raleigh, NC, for plaintiff.

Kenneth R. Keller, Carruthers & Roth, P.A., Joseph Finarelli, Carruthers & Roth,

P.A., Greensboro, NC, for intervenor–plaintiff.

Charles E. Johnson, Angelique R. Vincent, Robinson Bradshaw & Hinson, P.A., Charlotte, NC, for defendant/intervenor–defendant.

## MEMORANDUM OPINION AND ORDER

ELIASON, United States Magistrate Judge.

This case comes before the Court on two motions brought by defendant in a effort to have the action dismissed in its entirety. The procedural posture of the case is a little unusual because the plaintiff U.S. Equal Employment Opportunity Commission (EEOC) was the first to file the action. Defendant answered the complaint. Thereafter, the alleged discrimination victim, plaintiff Revonda Mickle (Mickle) was permitted to intervene. Defendant has not filed an answer to that complaint. Therefore, when defendant decided to seek dismissal of the complaints, it had to file two different motions. Because defendant filed an answer to the original EEOC complaint, it filed a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) as to that complaint. However, because defendant has not yet answered the complaint of plaintiff-intervenor Mickle, it filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) as to her complaint. Both of those motions have now been fully briefed by the parties and are ready for decision.

### Facts

The facts, as alleged by the EEOC and Mickle in their complaints, are as follows.[1] In February of 2000, Mickle was hired to work at one of defendant's restaurants in Asheboro, North Carolina. At that time, Mickle was pregnant with the child of her fiancé, Eugene Mestas. She and Mestas, who is Mexican–American, lived together in an apartment. Mestas also worked for defendant at the same restaurant.

Sometime before May 13, 2000, Mestas allegedly complained to the manager of the Asheboro restaurant about his use of racially offensive, harassing, and discriminatory remarks. On May 13, 2000, Mestas suffered an eye injury while at work and was treated at a local hospital. The next day, the manager sent another employee to Mickle and Mestas' apartment to tell Mestas that he was terminated.

Mickle claims that in June of 2000, she spoke with Brenda Warren, the Assistant Manager of the Asheboro restaurant, about the impending birth of her child and her desire to take a six-week maternity leave. She alleges that Warren told her that if she wanted to return earlier, she should let Warren know and that her job would be "held open" for her.

On August 6, 2000, Mickle completed her regular work shift for defendant and did not work again before giving birth to a son on August 9, 2000. At that point, she began the maternity leave she had discussed with Warren. However, due to subsequent events, she was never able to return to work.

Apparently, following his termination, Mestas sought the aid of legal counsel. On August 15, 2000, that counsel sent defendant a letter complaining of discrimination and harassment at the Asheboro restaurant and stating that Mestas intended to file a charge with the EEOC if a satisfactory solution was not reached. Six days later, Mickle allegedly called Warren and asked to be scheduled to work "in light of

---

1. Although the two complaints are not identical, they contain many of the same basic facts and allegations.

Mr. Mestas's termination and the couple's need for income." (Mickle Compl. ¶ 13) Warren initially advised her that she would be placed on the next week's schedule. However, on August 28, 2000, Warren told Mickle that defendant would have to "pass" on having Mickle return to work. Mickle was never allowed to return to work and instead, filed a charge with the EEOC.

Following an investigation, the EEOC filed this lawsuit alleging that Mickle had been terminated in retaliation for her fiancé's complaints about defendant's illegal discriminatory practices. This retaliation allegedly violated 42 U.S.C.2000e, *et seq.* (Title VII). Mickle then intervened with a similar complaint. In addition, she raises a claim for wrongful discharge/wrongful failure to rehire based on her sex in violation of the laws of North Carolina. Defendant now seeks to have both complaints dismissed.

### *Legal Standards*

█ Defendant requests dismissal of Mickle's complaint pursuant to Fed. R.Civ.P. 12(b)(6) because it fails to state a claim upon which relief may be granted. Such a motion to dismiss cannot succeed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.), *cert. denied,* 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *quoting Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, the Court must assume that the allegations in the complaint are true and construe them in the light most favorable to Mickle. *Id.* Defendant requests dismissal of the EEOC's complaint under Fed.R.Civ.P. 12(c). To succeed, defendant still must show that the complaint does not state a claim for relief. Therefore, the standard by which the complaints are to be judged

is the same for both motions. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice And Procedure* § 1367 (2d ed.1990); *Ramirez v. Department of Corrections, Colo.,* 222 F.3d 1238 (10th Cir. 2000).

### *Discussion*
### Federal Claims

█ Plaintiffs seek to recover for defendant's retaliatory action taken against Mickle because of her fiancé's protected activity. Title VII forbids retaliation. It provides in pertinent part that it is unlawful:

> for an employer to discriminate against any of his employees or applicants ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3.

In an ordinary retaliation case, a plaintiff must show that (1) **she** engaged in a protected activity, (2) **she** suffered an adverse employment action, and (3) the adverse action was taken because of **her** protected activity. *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001). The instant case does not present itself as an ordinary case. This is because, as plaintiffs present their case, (1) **Mickle's fiancé,** not Mickle, engaged in protected activity, (2) **Mickle,** not her fiancé, suffered an adverse employment action, and (3) the adverse action was ostensibly taken because of **Mickle's fiancé's,** not Mickle's, protected activity.

There is one obvious problem with plaintiffs' theory. The plain language of the statute states that it is illegal to retaliate against an employee or applicant because of that person's protected activity. It does not mention outlawing retaliation against

an employee or applicant because of someone else's activities. Still, the EEOC and Mickle believe that the statute should be interpreted to cover their theory of recovery. Defendant contends that Title VII simply does not outlaw third-party retaliation against persons who may associate with persons who engage in protected activity, but do not engage in protected activity themselves. Such retaliation is often denominated as vicarious or spite retaliation.

■ The question then, as framed by the parties, is whether the Title VII language quoted above should be read broadly enough to allow claims to be brought by persons punished or retaliated against because of protected activities engaged in by other persons. This is a debate which has engaged a number of other courts, with no firm resolution or overall consensus being reached. Some courts, although admitting that the result may hamper the overall purposes of Title VII, find that the language of the statute simply does not allow such third-party claims.[2] Others, swayed by Title VII's broad nature and comprehensive remedial scheme, would allow third-party retaliation claimants to proceed on the theory espoused by the EEOC and Mickle.[3] Although no circuit court of appeals has explicitly adopted the EEOC's and Mickle's position, two have issued opinions which are generally favorable to it.[4] Most importantly, so far as the parties' and the Court's own research show, none of the previous decisions addressing the issue are binding authority in this Court. Neither the Fourth Circuit Court of Appeals nor the United States Supreme Court have ever addressed this particular issue.

Overall, the Court finds more persuasive the decisions of the circuit courts which reject reading a third-party retaliation cause of action into Title VII. First, the plain language of the statute clearly covers only those who "actually oppose" discrimination or those who "participate, assist, etc.," in an investigation or proceeding. In other words, the person must have some connection to the protected activity. To read Title VII as the EEOC and Mickle do would be more than interpreting an ambiguous passage in a statute. It would actually add language to what Congress has written so as to forbid adverse employment actions against persons who have not engaged in protected activity. The number of lawsuits which could spawn from this rule could be enormous in a company of any size.[5] The advocated reading is not

---

**2.** *Fogleman v. Mercy Hospital, Inc.,* 283 F.3d 561 (3rd Cir.), *cert. denied,* 537 U.S. 824, 123 S.Ct. 112, 154 L.Ed.2d 35 (2002)(addressing nearly identical provisions of other statutes and noting Title VII rules apply); *Smith v. Riceland Foods, Inc.,* 151 F.3d 813 (8th Cir. 1998); *Holt v. JTM Industries, Inc.,* 89 F.3d 1224 (5th Cir.1996), *cert. denied,* 520 U.S. 1229, 117 S.Ct. 1821, 137 L.Ed.2d 1029 (1997); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 241 F.Supp.2d 1123 (D.Kan. 2002).

**3.** *See, e.g., Gonzalez v. New York State Department of Correctional Services Fishkill Correctional Facility,* 122 F.Supp.2d 335 (N.D.N.Y. 2000); *Equal Employment Opportunity Commission v. Nalbandian Sales, Inc.,* 36 F.Supp.2d 1206 (E.D.Cal.1998); *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978).

**4.** *EEOC v. Ohio Edison Co.,* 7 F.3d 541 (6th Cir.1993)(using approving language concerning such claims, although in somewhat different circumstances); *Johnson v. University of Cincinnati,* 215 F.3d 561, 580 (6th Cir.), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000)(dicta citing EEOC policy manual on the issue with approval); *Wu v. Thomas,* 863 F.2d 1543 (11th Cir.1989)(third-party retaliation claim allowed to proceed, but exact issue raised here not directly addressed).

**5.** Plaintiffs would forbid any adverse action being taken against a protestor's relatives,

practical because it fails to tie the adverse action to any protected activity by the aggrieved party.

Further, as the Court in *Fogleman* noted, this is not a situation where "blind adherence to the literal meaning of a statute would lead to a patently absurd result that no rational legislature could have intended." *Fogleman,* 283 F.3d at 569. It is entirely possible that Congress could have written the statute as it did to eliminate frivolous suits by friends, relatives, or acquaintances of persons who do fall within the language of the statute. *Id.* at 570. Moreover, as three circuit courts have noted (*see* 283 F.3d at 565 n. 2, *supra*), the anti-retaliation provision already offers very broad protection which will cover the vast majority of situations. "In most cases, the relatives and friends who are at risk for retaliation will have **participated in some manner** in a co-worker's charge of discrimination," and, thus, there is no need for a new third-party retaliation theory. *Holt,* 89 F.3d at 1227 (emphasis extended).

■ Although the Court rejects plaintiffs' request that Title VII be read to impliedly forbid retaliation against third parties as a result of someone else's protected activity, that does not end the matter. The Court finds that Title VII, as written, already provides sufficient protection to persons in Mickle's position. This conclusion is achieved by construing the existing language in a natural, unstrained fashion, albeit broadly, as is consistent with the remedial purpose of Title VII.[6]

■ Title VII's anti-retaliation provision can be divided into two distinct prongs. The first is the "opposition" prong, which makes it illegal to discriminate against an employee because he or she has opposed illegal discrimination. Plaintiffs assert that Mickle should be protected under the opposition prong, but the Court rejects such coverage as explained above. The second division is what the Court denominates as the "participation" prong. It covers all persons who have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. It is the participation prong which bears further examination.

■ The participation prong itself can be divided into two categories. The first provides coverage to persons making a charge. The second covers persons testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. By using the phrase "assisted . . . in any manner," it is not unreasonable to conclude that Congress intended to cover persons who assist other persons who directly engage in protected activity. The reasoning is as follows. Once a person engages in protected activity, there likely will be some sort of investigation, proceeding, or hearing, including investigations by the employer. These investigations and proceedings may likely involve third parties whose protection is necessary in order that the prohibition against retaliation is supported and not subverted. As will be seen, the protection covers anticipatory retaliation against persons who assist in ac-

---

friends, acquaintances, associates, etc. Assuming, as is reasonable, that persons engage in protected activity with any frequency, the number of people who would have an "automatic" prima facie case should any adverse action be taken against them would be huge, along with the amount of possible frivolous litigation generated.

6. As the Fifth Circuit stated in *Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 891 (5th Cir.1970):

It is, therefore, the duty of the courts to make sure that the Act works, and the intent of Congress is not hampered by a combination of a strict construction of the statute and a battle with semantics.

tivity that could lead to investigations or proceedings.

█ Title VII, in general, and the participation prong of the anti-retaliation provision in particular, are to be broadly interpreted. *Ohio Edison*, 7 F.3d at 544; *Smith* 151 F.3d at 819. In addition, a review of case law reveals three distinct interpretative principles which provide guidance for construing the participation prong. Using these principles, the Court concludes that the participation prong is potentially broad enough to encompass retaliation against third parties in the circumstances alleged in the instant case. Consequently, the Court holds that the properly framed issue before the Court is whether Mickle engaged in protected activity by assisting in the making of her fiancé's complaints or acting as a possible participant in an investigation.

█ The first interpretive principle the Court starts with is the one which holds that Title VII's anti-retaliation clause covers anticipatory retaliation. Even though the language of the statute is written in the past tense and appears to assume that protected activity occurred at some point in the past and prior to any retaliation (i.e., "participated," "assisted"), it covers preemptive employer actions. An employer may not discriminate against an employee who it fears will later file a charge, testify, assist, or participate in an investigation or hearing. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993)(action taken in fear that person would soon file a claim falls within scope of retaliation clause); *Croushorn v. Board of Trustees of University of Tennessee*, 518 F.Supp. 9, 19 (M.D.Tenn.1980)(failure to retain teacher after teacher stated he would file a charge could qualify as retaliation). This approach is consistent with the statement of the United States Supreme Court, albeit made in a different factual situation, that Title VII should not be interpreted to "provide a perverse incentive for employers to fire employees who might bring Title VII claims." *Robinson v. Shell Oil Company*, 519 U.S. 337, 346, 117 S.Ct. 843, 848, 136 L.Ed.2d 808 (1997).

█ Second, Title VII claims are based on the employer's knowledge or perception of an employee's status or actions which result in an intentional act of discrimination. Plaintiffs must prove their status or actions were the cause of the discrimination. For instance, in *Mandia v. ARCO Chemical Co.*, 618 F.Supp. 1248 (W.D.Pa. 1985), a husband alleged he had been discriminated against because his wife filed a charge with the EEOC. The court dismissed his claim because it found that there was no evidence that the supervisor who fired the husband knew at the time of the firing that the wife had filed a claim. In other words, the employer was protected by the fact that it did not know or perceive that the wife had filed a complaint even though she had, in fact, done so.

█ In other, likely rarer, circumstances, an employer's perception or even misperception can lead to potential liability. For example, in *Fogleman, supra*, a son attempted to proceed with a third-party retaliation claim based on his father having sued their employer for discrimination. The court rejected the third-party retaliation claim, but allowed him to proceed on a direct retaliation claim based on the theory that the employer perceived that the son had assisted his father in pursuing the lawsuit. It found that Title VII focuses on the employer's subjective reasons for taking an action, not the correctness of the reasoning as a factual matter. *Id.* at 572. As the court in *Fogleman* pointed out, if an employer does not hire a person because it believes that the person is a Muslim, the employer has discriminated against the person on the basis of religion, even if the person is not actually a Muslim. *Id.*

The third line of cases which aids the Court in interpreting the participation prong in the present case lies in the treatment given to the words "assisted" and "participated." Those words are modified in the anti-retaliation provision by the phrase "in any manner." "[T]he word 'any' has an expansive meaning." *United States v. Gonzales,* 520 U.S. 1, 5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997), *citing, Webster's Third New International Dictionary* 97 (1976). The word "assisted" has been interpreted to include both voluntary and involuntary assistance. *Merritt v. Dillard Paper Company,* 120 F.3d 1181, 1186–87 (11th Cir.1997). It can even be interpreted to include accompanying another person or providing undefined help. *Owens v. Rush,* 654 F.2d 1370, 1379 (10th Cir.1981)(not Title VII case, but court defined "assisted" to include accompanying a spouse to an attorney's office and helping in some undefined manner in drafting a charge of discrimination).

Therefore, the word "assisted" means providing voluntary or involuntary support in any manner to a person the employer believes to have engaged, or fears will be engaging, in protected activity. The assistance may, but need not, be actual assistance so long as it is proven that the employer perceives that assistance was or will be given, and the facts are such that it is reasonable to believe that adverse action was taken against a plaintiff for providing aid and support to a person who was believed to be engaging in protected activity or about to so engage.

The Court will now examine whether plaintiffs have adequately alleged the three elements of a retaliation claim.[7] Regarding the first element, plaintiffs must prove Mickle engaged in protected activity. It has been alleged that the fiancé, Mestas, intended to file a complaint with the EEOC and that he had announced his intention to defendant. Shortly thereafter, according to Mickle, she told Brenda Warren, one of defendant's managerial staff, that she needed to return to work sooner than originally planned because of Mestas' termination and the couple's need for income. Warren initially informed Mickle that she could return, but later revoked the offer.

These allegations are sufficient to create the reasonable inference that the employer knew Mestas was being substantially assisted financially by Mickle and that cutting off Mickle's income could put financial pressure on Mestas. Without the financial support from Mickle, Mestas could well be forced to accept a quick and/or small settlement. Also, he might have trouble retaining counsel without sufficient funds. For this reason, Mickle has sufficiently alleged that defendant had reason to perceive that she was assisting, or that defendant anticipated she would assist, Mestas at the time he was about to file an EEOC charge and that her support might be important to the outcome of this charge. The Court cannot find beyond any doubt that plaintiffs could not prove that Mickle "assisted" Mestas within the meaning of Title VII's anti-retaliation provision.

A second basis for finding that defendant believed Mickle would assist Mestas arises because her work at the restaurant gave her possible direct knowledge of the truth or falsity of Mestas' allegations. Thus, Mickle could well be interviewed as part of any investigation. Given that Mickle was Mestas' live-in fiancée, it would not be unreasonable for defendant to ex-

---

7. The elements of a retaliation claim are that (1) the plaintiff directly engaged in a protected activity or assisted a person who engaged in protected activity, (2) that the defendant took an adverse employment action against him or her, and (3) that the adverse action was causally related to the protected activity.

pect her testimony to be favorable to Mestas. This would give defendant additional reason to perceive Mickle as a person who was aiding or who would aid Mestas in pursuing his EEOC charge and in the investigation. In fact, it is possible that plaintiffs may be able to prove Mickle was retaliated against because defendant perceived she would participate in the investigation.

Because of her financial support to Mestas and her position as a potential witness for Mestas in investigations or potential hearings, Mickle could certainly have been seen by defendant as a person aiding or likely to aid Mestas with his discrimination complaints. The fact that Mestas had not yet filed an EEOC charge does not alter the situation. He had clearly notified defendant that he intended to file, and any anticipatory retaliation against him or those who might support him would be illegal at that point. Therefore, the Court finds that the first element of the EEOC and Mickle's retaliation claim has been sufficiently alleged. Mickle has alleged facts indicating that defendant perceived her as someone who was or who would be assisting someone engaged in protected activity, and perhaps as someone who would be participating in an EEOC investigation. This is sufficient to survive defendant's motions.[8]

■ Plaintiffs also have alleged sufficient facts to satisfy the second element of the retaliation claim. The parties differ over whether defendant terminated Mickle or simply refused to rehire her when she attempted to return to work in August of 2000. However, either of these would qualify as an adverse employment action. Because plaintiffs claim that one or the other occurred, there is no question that the second element of the retaliation claim, adverse employment action, has been properly alleged.

■ Last, the complaints satisfy the third element of the Title VII retaliation claim. Both the EEOC and Mickle directly state that she was terminated or not hired because of her connection with, and assistance to, Mestas and his complaints of discrimination. Thus, plaintiffs have adequately alleged all three elements of a Title VII retaliation claim.

■ The above resolution of the motions demonstrates the lack of necessity for the Court to manufacture a third-party retaliation rule even if such were permissible. Moreover, this broad construction of the "participation prong" of Title VII's retaliation provisions should not serve to encourage the filing of unmeritorious cases. Third-party friends and relatives must show that they have sufficient, obvious, known connections and have taken actions with respect to the person originally engaging in protected activity so that it would be reasonable to believe that their employer perceived them as participating in or assisting the protected activity. Plaintiffs then must establish that their assistance was the cause of the adverse action taken against them.

### State Law Claim

■ Mickle alone raises a state law claim for wrongful termination based on her sex. The elements of such a claim are that (1) she was discharged from her em-

---

**8.** While there is no guarantee that the EEOC and Mickle will prevail, they have already made some progress toward establishing a *prima facie* case of retaliation. For instance, defendant has admitted that it knew of Mickle and Mestas' relationship and living arrangements. (Def. Resp. to EEOC's First Req. for Admiss., Req. 2, 11, 12) Also, Brenda Warren apparently stated to the EEOC that she was told by higher management that Mickle was not to be rescheduled to work because of Mestas' "lawsuit." (Warren's EEOC Aff. of Sept. 12, 2001)

ployment, and (2) the discharge was unlawful or in violation of the express public policy of North Carolina. *McLean v. Patten Communities, Inc.,* 332 F.3d 714, 720 (4th Cir.2003); *Amos v. Oakdale Knitting Co.,* 331 N.C. 348, 351, 416 S.E.2d 166, 168 (1992). Defendant contends that Mickle has failed to allege that she was terminated. It reads her complaint to state that she resigned her employment before her child was born and was not rehired when she sought to return. This is simply an incorrect reading of the complaint.

Mickle plainly alleges that she expressed a desire to be out on maternity leave and that she was told her job would be "left open" to her. She also alleges that when she called to return to work after her baby's birth, she simply asked to be put back on the schedule but was not. Viewing these allegations in the light most favorable to Mickle, she has alleged that she was terminated. The description of events as given by Mickle does not fall into a scenario of resignation and rehiring. Someone who has resigned does not normally have a job held open for her. Also, when Mickle sought to return, she did not seek to reapply or interview, and does not state that defendant asked her to do so. Rather, she simply asked to be placed back on the work schedule and was told initially that this would be done, then told it would not be.[9] All of this indicates nothing more than an employee who took an unpaid period of leave by having her name left off the work schedule for a few weeks. Mickle has sufficiently alleged the termination element of the claim.[10]

Regarding the second element of her claim, Mickle states that she was terminated due to her sex. Such a termination would be a violation of North Carolina public policy as defined in N.C. Gen. Stat. § 143–422.2. Because Mickle has sufficiently alleged both elements of this cause of action, defendant's motion to dismiss is denied.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (docket no. 16) and motion for judgment on the pleadings (docket no. 17) be, and the same hereby are, denied.

---

9. Even if defendant's construction of the complaint was correct, Warren's alleged statement that she would schedule Mickle for work could be seen as a "rehiring." If so, Warren's later change of mind would still be the allegedly discriminatory termination.

10. It is true that Mickle does allege wrongful failure to rehire as an alternative scenario in her state law claim. Defendant states that North Carolina common law does not recognize such a claim, but has cited no case stating this. Nevertheless, assuming for the sake of argument that defendant is correct on this point, its motion still fails because Mickle's primary claim is for wrongful termination, which North Carolina common law does recognize.