Brian L. HIGGINS Plaintiff

v.

THE TJX COMPANIES, INC. and the Concord Group, Inc., D/B/A A.J. Wright Defendants

No. CIV.04–04–P–H.

United States District Court, D. Maine.

Aug. 19, 2004.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

The plaintiff, Brian L. Higgins, has sued The TJX Companies and the Concord Group, Inc., d/b/a A.J. Wright (hereinafter "A.J. Wright") for alleged violations of the anti-retaliation provisions of Title VII of the Civil Rights Act and the Maine Human Rights Act and for intentional and negligent infliction of emotional distress. Higgins claims that A.J. Wright refused to hire him because his cousin, a former A.J. Wright employee, filed a sexual harassment lawsuit against the company. I conclude that neither Title VII nor the Maine Human Rights Act recognizes a cause of action for retaliation against a person who has not personally engaged in protected conduct, and that Higgins cannot prevail on his claims of intentional and negligent infliction of emotional distress. Accordingly, I **GRANT** A.J. Wright's motion for summary judgment on all counts of the complaint.

The First Circuit has not decided whether Title VII prohibits an employer from taking adverse employment action against a third party in retaliation for another's protected activity (so-called "third party" retaliation). Title VII prohibits an employer from discriminating against an employee or job applicant "because *he has opposed* any practice made an unlawful employment practice by this subchapter, or because *he has made* a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (2003) (emphases added). The plain language of the statute therefore requires that the person retaliated against also be the person who engaged in the protected conduct. Relying on this plain language (or similar language in the ADEA and ADA[1]) several circuit courts

Richard B. Slosberg, Portland, ME, for Brian L. Higgins, Plaintiff.

Krista Green Pratt, Seyfarth Shaw, Boston, MA, Peter Bennett, Bennett Law Firm, P.A., Portland, ME, for TJX Companies Inc. and Concord Buying Group Inc., Defendants.

1. The ADA and the ADEA prohibit retaliation against an individual because "such individu-

have declined to recognize third party retaliation claims.[2] *E.g., Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 819 (8th Cir. 1998) ("[W]e hold that a plaintiff bringing a retaliation claim under Title VII must establish that she personally engaged in the protected conduct."). *See also Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 569 (3d Cir.2002) ("The plain text of the [ADA's and ADEA's] anti-retaliation provisions requires that the person retaliated against also be the person who engaged in the protected activity."); *Holt v. JTM Industries, Inc.,* 89 F.3d 1224, 1227 (5th Cir. 1996) (holding that an individual who has not participated in protected conduct does not have standing to sue for retaliation under the ADEA).

There is a compelling policy argument to be made in favor of permitting third party retaliation claims. As the Third Circuit has recognized, "[a]llowing employers to retaliate via friends and family … would appear to be in significant tension with the overall purpose of the anti-retaliation provisions, which are intended to promote the reporting, investigation, and correction of discriminatory conduct in the workplace." *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 569 (3d. Cir.2002). However, Congress, for whatever reason,[3] chose to write the statute to require that the person retaliated against also be the person who engaged in the protected activity. In accordance with the plain language of Title VII, I conclude that Higgins does not have a claim for retaliation because Higgins did not personally engage in protected activity. Accordingly, I **GRANT** A.J. Wright's motion for summary judgment on Count I of the complaint.

■ The Law Court has not decided whether third party retaliation is actionable under the Maine Human Rights Act ("MHRA"). The relevant MHRA provision provides that it is unlawful employment discrimination for an employer "to refuse to hire … any applicant for employment because … of *the applicant's* previous assertion of a claim or right … or because of previous actions *taken by the applicant* that are protected" conduct. 5 M.R.S.A. § 4572(1)(A) (2002) (emphases added). Like Title VII, the plain language

al" has engaged in protected activity. 42 U.S.C. § 12203(a); 29 U.S.C. § 623(d). "Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, … precedent interpreting any one of these statutes is equally relevant to interpretation of the others." *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir.2002).

2. Higgins claims that the circuits are split on whether the party bringing the retaliation claim personally must have engaged in protected conduct, but he cites no authority. In *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 544 (6th Cir.1993), the Sixth Circuit said, in dicta, that "a plaintiff's allegation of reprisal for a relative's antidiscrimination activities states a claim upon which relief can be granted under Title VII." In *Ohio Edison,* however, the person who engaged in the protected conduct did so *on behalf of* (or as a representative of) the employee complaining of retaliation. The court's holding was that the language of Title VII should be read broadly to cover situations where one employee engages in protected conduct on behalf of another employee, who is ultimately retaliated against. Those are not the facts here. There does, however, appear to be a "split" among district courts in circuits without controlling law on the question. *Compare De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978) *with U.S. EEOC v. Bojangles Rest., Inc.,* 284 F.Supp.2d 320 (M.D.N.C. 2003).

3. There are "plausible" policy reasons that Congress might choose to limit retaliation claims to individuals who personally engaged in protected conduct. For example, Congress may have thought that barring third-party retaliation was unnecessary or that permitting third-party claims would open the door to frivolous lawsuits. *Fogleman,* 283 F.3d at 569–70.

of the MHRA's anti-retaliation provision requires that the person complaining of retaliation (the applicant) also be the person who engaged in protected conduct. Moreover, the Law Court has repeatedly recognized that it is appropriate to use federal precedent as an aid in interpreting the MHRA. *E.g., Bowen v. Dept. of Human Servs.,* 606 A.2d 1051, 1053 (Me.1992). Given the MHRA's plain language and the federal precedents rejecting third party retaliation claims under Title VII's similar language, I conclude that the MHRA does not create cause of action for retaliation against a person who has not personally engaged in protected conduct. Accordingly, I **GRANT** A.J. Wright's motion for summary judgment on Count II of the complaint.

Counts III and IV allege intentional infliction of emotional distress and negligent infliction of emotional distress, respectively. A.J. Wright argues that Higgins has failed to produce sufficient evidence on these claims to generate a genuine issue of material fact. Mot. at 7. To recover for intentional infliction of emotional distress, Higgins must show that A.J. Wright's conduct was "extreme and outrageous" and "regarded as atrocious [and] utterly intolerable in a civilized community." *Curtis,* 2001 ME 158 at ¶ 10, 784 A.2d 18. Higgins alleges that A.J. Wright refused to hire him because his cousin filed a lawsuit and that, as he was walking out of the store after filling out a job application, an employee "hollered" at him "like [he] had ... walked out of the store with a bunch of stuff." [4] Defendant's Statement of Material Facts ("SMF") ¶¶ 8–17. These allegations simply fall short of the "extreme and outrageous" standard as it has been defined in the Maine caselaw. Moreover, in order to recover for negligent infliction of emotional distress, Higgins must show, in part, that he suffered "severe" or "serious" emotional distress as a result of A.J. Wright's conduct and that his distress was reasonably foreseeable. *See Curtis v. Porter,* 2001 ME 158, ¶ 10, 784 A.2d 18, 22; *Gammon v. Osteopathic Hosp. of Maine,* 534 A.2d 1282, 1285 (Me. 1987). Higgins' alleged distress is that he felt like he "wasn't worth anything," started drinking more frequently, and felt "angrier." Defendant's Statement of Material Facts at ¶ 18. It is questionable whether this distress could be characterized as "severe." Even if it is "severe," it is not a foreseeable consequence of A.J. Wright's having denied Higgins a job. A.J. Wright is entitled to summary judgment on Counts III and IV.

The defendants' motion for summary judgment is **GRANTED**.

So Ordered.

---

4. On its motion for summary judgment, A.J. Wright submitted a statement of material facts supported by record citations in accordance with Local Rule 56(b). Higgins responded with a so-called "Statement of Material Facts Disputed." Many of the paragraphs in Higgins' submission mirror, word for word, the paragraphs in A.J. Wright's statement of material facts. None of Higgins' paragraphs, however, admits, denies, or qualifies A.J. Wright's assertions. Accordingly, Higgins is deemed to have admitted A.J. Wright's version of the facts. Local Rule 56(e).