Luba S. Kowalyszyn DE MEDINA, Plaintiff,

v.

John E. REINHARDT, Defendant.

Civ. A. No. 77–0360.

United States District Court, District of Columbia.

Jan. 27, 1978.

G. Alexander Park, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Michael I. Gewirtz, Asst. U. S. Attys., Washington, D. C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Plaintiff in this case alleges that she was denied employment at the United States Information Agency (USIA) on account of her sex and national origin in violation of Title VII of the Civil Rights Act of 1964, *as amended* by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16. She also alleges that she was denied employment in violation of Title VII in retaliation for her husband's anti-discrimination activities on behalf of minority group members at the USIA. Plaintiff seeks a declaratory judgment, back pay and retroactive promotion, and injunctive relief. This case is now before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment. For the reasons hereinafter stated, the Court will grant defendant's motion to dismiss with respect to all plaintiff's claims of employment discrimination *except* her claim arising out of her application for employment in April 1976, and, with respect to this remaining claim, the Court will deny defendant's motion for summary judgment.

## I. BACKGROUND

Between March 1971 and January 1974, plaintiff was an employee of the USIA in the Ukrainian Service of the USSR Division and then in the Latin American Division of the Voice of America (VOA). On January 4, 1974, plaintiff resigned her position for health reasons.

In the summer of 1975, plaintiff reapplied for a position in the News Division of VOA, but was denied employment. According to defendant, plaintiff was not given a position because of her unsatisfactory performance on a writing test reviewed by several editors in the Division. Plaintiff did not at that time file any complaint of discrimination. Later, in April 1976, plaintiff again sought a position in the News Division. Her request to retake the writing test, however, was denied on or about April 29, 1976. Thereafter, on May 10, 1976, plaintiff filed

an informal charge of discrimination, which was followed on June 22, 1976, by a formal complaint to the agency.

The Equal Employment Opportunity (EEO) Office of the USIA then commenced an investigation of plaintiff's administrative complaint. This investigation was concluded on December 13, 1976, and the USIA, on February 4, 1977, issued its final decision, which found no sex or national origin discrimination and no retaliation for her husband's activities on behalf of minority groups. Plaintiff then filed this suit on March 3, 1977.

In the amended complaint herein, which was filed on July 7, 1977, plaintiff alleges that she applied for and was denied a number of positions with various divisions of the USIA. These applications were allegedly made both before and after the April 29, 1976, incident with the News Division of the VOA, which was the alleged discriminatory act immediately preceding the filing of the administrative complaint that culminated in the filing of this suit. In chronological order, the following are the other positions for which plaintiff allegedly applied: [1]

1. August 1974 — Ukrainian Service, USSR Division
2. "Summer" 1974 — Foreign Information Division, USIA Office of Research
3. October 1974 — Ukrainian Service, USSR Division
4. "Sometime" 1975 — Foreign Information Division, USIA Office of Research
5. "Summer" 1975 — Production Branch, Africa Division
6. "Late" 1975 or "Early" 1976 — Ukrainian Service, USSR Division
7. August 1976 — USSR Division
8. August 1976 — Production Branch, Latin American Division
9. August 1976 — Production Branch, Latin American Division (contract work)

10. March 1977 — Classified Document Section, USIA Library
11. May 1977 — Ukrainian Service, USSR Division
12. May 1977 — USIA Library
13. June 1977 — Near East Division

## II. DEFENDANT'S MOTION

Defendant's motion seeks dismissal of all plaintiff's claims with respect to those applications for employment made *prior* to April 1976 (Applications (1)–(6), *supra*) on the ground that plaintiff failed to file a timely charge/complaint with the USIA and is thus barred from seeking relief with respect to these employment denials. Defendant's motion further seeks dismissal of all plaintiff's claims with respect to those applications for employment made *subsequent* to April 1976 (Applications (7)–(13), *supra*) on the ground that plaintiff *never* filed a charge/complaint with the USIA concerning these applications and thus failed to exhaust her administrative remedies. Defendant's motion also seeks dismissal of plaintiff's claims based on retaliation for her husband's anti-discrimination activities at the USIA. Finally, defendant seeks summary judgment with respect to the claims arising from a number of the employment applications made by the plaintiff, including the one claim which defendant admits was timely and properly filed with the USIA—the April 1976 application for a position with the News Division of VOA. With respect to the April 1976 denial of plaintiff's application for a position with the News Division, defendant contends that he is entitled to summary judgment because plaintiff's rejection was solely for a legitimate, nondiscriminatory reason—her previous unsatisfactory performance on the writing test.

1. In addition, plaintiff's opposition to the instant motion indicates that she applied once again to the Ukrainian Service on July 21, 1977, two weeks after the amended complaint was filed herein. The Court takes notice of the fact that some of the dates of plaintiff's alleged applications set forth in the amended complaint are inconsistent with the dates set forth in plaintiff's statement of material facts (September 29, 1977) and those set forth in plaintiff's affidavit of September 28, 1977. For the purposes of this motion, the Court has taken as true the dates alleged in the amended complaint. None of the inconsistencies would affect the Court's holding herein.

### III. DISCUSSION

A. *The Court Will Dismiss Plaintiff's Claims Arising Out of Her Pre-April 1976 Employment Applications for Lack of Subject Matter Jurisdiction Because These Claims Were Not Timely Filed with the Agency as Required by the Pertinent Civil Service Regulations.*

■ "It is now established that '[t]imely filing is a prerequisite to the maintenance of a Title VII action.'" *Cates v. Trans World Airlines, Inc.,* 561 F.2d 1064, 1067 n. 3 (2d Cir. 1977), *quoting United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). This jurisdictional principle is equally applicable to suits brought by private sector employees and those brought by federal employees such as the plaintiff herein. *See Ettinger v. Johnson,* 518 F.2d 648 (3d Cir. 1975); *Briscoe v. Director, Administrative Office of the United States Courts,* C.A.No. 76–628, Slip op. at 5–6 (D.D.C.1977). Thus, this Court has jurisdiction to grant plaintiff relief only on those claims alleged by plaintiff that were timely filed.

■ The pertinent regulations promulgated by the Civil Service Commission (CSC) pursuant to 42 U.S.C. § 2000e–16(b) require a federal employee, prior to maintaining a civil action, to file a charge of discrimination with the defendant-agency within 30 days of "the matter causing him to believe he had been discriminated against." 5 C.F.R. § 713.214(a)(1)(i) (1977). In the present case, it is undisputed that the *only* discriminatory action alleged to have been taken within the 30 days prior to plaintiff's initial complaint to the USIA on May 10, 1976, was the News Division's rejection of plaintiff's April 1976 employment application. Thus, plaintiff would normally be barred from proceeding on her claims arising from pre-April 1976 employment applications for which charges were not filed with the USIA within the requisite 30-day period.

Plaintiff propounds two theories which she contends except her from the impact of 5 C.F.R. § 713.214(a)(1)(i) (1977). First, she contends that the agency's course of conduct in denying her employment is a "continuing" violation of Title VII which excuses her failure to file a timely charge after each alleged incident of discrimination. Second, she contends that since the complaint she filed with the USIA in May 1976 alleged a consistent course of discriminatory conduct between 1974 and 1976, *and* since the agency accepted this complaint and in fact investigated her allegations with respect to her pre-April 1976 rejections, the agency in effect waived the time limits of 5 C.F.R. § 713.214(a)(1)(i) (1977). Accordingly, she argues, the Court should not bar plaintiff's pre-April 1976 claims.

■ While the concept of "continuing violation" for the purposes of Title VII's jurisdictional limitations is recondite, it is clear that plaintiff has not alleged a "continuing violation" which could operate to except her from the time requirements of 5 C.F.R. § 713.214(a)(1)(i) (1977). As the Eighth Circuit has stated, "[t]he rationale underlying the allowance of actions for continuing discrimination [notwithstanding the Act's time requirements] is to provide a remedy for past actions which operate to discriminate against the complainant at the present time." *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir. 1975). The Supreme Court, in the recent case of *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 551 (1977), indicated clearly, however, that this rationale is applicable *only* where a "present *violation* exists." Thus, where, as in the instant case, there is a mixture of timely and untimely claims, the Court must determine "whether the facts constitute a continuing pattern of discrimination commencing [before the pertinent time period], *yet progressing uninterrupted into that time frame.*" *Tarvesian v. Carr Division of TRW, Inc.,* 407 F.Supp. 336, 339 (D.Mass.1976) (emphasis added). Absent such a present, uninterrupted pattern or system of discrimination in violation of Title VII, a federal employee's claims that arose more than 30 days before a charge was first filed with the defendant-agency are barred under Title VII.

The "continuing course of discriminatory conduct" alleged by plaintiff is a series of denials of her employment applications. Even if, as plaintiff alleges, these denials were the result of an ongoing practice or policy of the USIA, they are nevertheless "discrete" rather than ongoing acts of discrimination. *See Blackmon v. McLucas,* C.A.No. 76–758, Slip op. at 2 (D.D.C. Order of December 6, 1976). It is well established that such discrete refusals to hire, which are "isolated and completed acts against a particular individual," are not "continuing" violations of Title VII that give an individual plaintiff a continuing right to file a claim against the defendant-agency. *Loo v. Gerage,* 374 F.Supp. 1338, 1340 (D.Hawaii 1974). *See Molybdenum Corp. of America v. EEOC,* 457 F.2d 935, 936 (10th Cir. 1972); *Jurinko v. Edwin L. Wiegand Co.,* 477 F.2d 1038, 1042 (3d Cir.), *vacated on other grounds,* 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973). As the Eighth Circuit has held:

> [T]he effects of the alleged discrimination were felt by the [plaintiff] when [she] was denied employment and they terminated on that date. To predicate a finding of continuing discrimination on these facts would do violence to the policies underlying the limitations provisions of Title VII.

*Smith v. Office of Economic Opportunity for Arkansas,* 538 F.2d 226, 229 (8th Cir. 1976). *Accord, Cisson v. Lockheed-Georgia Co.,* 392 F.Supp. 1176, 1180–84 (N.D.Ga. 1975). Accordingly, the Court must reject plaintiff's "continuing violation" theory.

The Court also rejects plaintiff's argument that the time limits imposed by 5 C.F.R. § 713.214(a)(1)(i) (1977) are inapplicable to her pre-April 1976 claims. Plaintiff premises this argument on 5 C.F.R. § 713.-214(a)(4) (1977), which authorizes agencies to waive the 30-day time limit for the filing of administrative charges for "reasons considered sufficient by the agency." Although such a waiver was neither expressly sought nor expressly granted in this case, she argues that since the USIA has such waiver authority *and* since it *in fact* accepted and investigated her May 1976 complaint which alleged a continuing course of discriminatory conduct between 1974 and 1976, the USIA should be deemed to have waived the 30-day limit with respect to plaintiff's untimely claims between 1974 and 1976.

The result plaintiff would have this Court reach is not without precedent. Indeed, two decisions in this District have adopted a similar approach to that suggested by plaintiff. These cases *Ward v. Califano,* 443 F.Supp. 89 (D.D.C. January 16, 1978), and *Scott v. Weinberger,* 416 F.Supp. 221 (D.D.C.1976), both adopted a quasi-estoppel approach and held that an agency that has pursued an investigation of an employment discrimination complaint cannot be said to be prejudiced by the untimeliness of such a complaint. Accordingly, both the *Ward* and *Scott* courts refused to dismiss the respective plaintiff's untimely claims.

Notwithstanding the aforesaid support for plaintiff's argument in the instant case, the Court concludes that the USIA's acceptance and investigation of plaintiff's complaint, which alleged both a timely claim and numerous untimely claims, should *not* be deemed to be a waiver of the 30-day limit for the untimely claims. Absent an application to the agency by a complainant for a waiver under § 713.214(a)(4), and absent any express determination by the agency that the waiver of the 30-day limit for filing administrative charges is warranted,[2] the Court concludes that it is

---

2. The Court notes that an agency's decision *not* to grant a requested extension or waiver of the 30-day time limit for filing an administrative charge or complaint would likely be amenable to judicial review under section 10 of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1976). Courts would generally be reluctant to find an agency's decision *not* to grant a requested waiver to be "arbitrary, capricious, [or] an abuse of discretion." However, in a case in which the facts were similar to *Scott v. Weinberger, supra*—i.e., where the agency thoroughly investigated the administrative complaint *and found discrimination in violation of Title VII*—a reviewing court might well conclude that the agency's refusal to waive the

without jurisdiction to award plaintiff relief on her claims that were not timely filed with the agency.[3] A contrary result would in the Court's view, undermine "the basic purpose of [42 U.S.C. § 2000e–16]: the rooting out of every vestige of employment discrimination within the federal government." *Hackley v. Roudebush*, 171 U.S. App.D.C. 376, 394, 520 F.2d 108, 136 (1975). If federal agencies were unable to investigate an untimely discrimination complaint by an employee or applicant without waiving permanently the jurisdictional defense of timeliness in any subsequent civil action brought by such employee or applicant, these agencies would be deterred from ever voluntarily attempting to uncover and remedy discriminatory practices within their midsts that were not timely complained of. Thus, while acceptance of plaintiff's argument might at first appear to promote the Act's goals by relaxing the impact of § 713.214(a)(1)(i)'s stringent time limits, it would in the long run deprive untimely complainants of *any* avenue of redress—judicial or administrative.

For the aforestated reasons, the Court concludes that it is without jurisdiction to award plaintiff relief based on her applications for employment prior to April 1976 because claims based on these applications were not timely filed with the USIA. Accordingly, the Court will dismiss these pre-April 1976 claims. The Court wishes to emphasize, however, that while these dismissed claims are "the legal equivalent[s] of a discriminatory act which occurred before the statute was passed," they may nevertheless "constitute relevant evidence" of discrimination with respect to plaintiff's timely April 1976 claim. *United Air Lines, Inc. v. Evans*, 431 U.S. at 558, 97 S.Ct. at 1889.

B. *The Court Will Dismiss Plaintiff's Claims Arising Out of Her Post-April 1976 Employment Applications Because of Plaintiff's Failure to Exhaust Her Administrative Remedies with Respect to These Claims Before Seeking Judicial Relief Thereon.*

█ The Court concludes that plaintiff's claims based on her employment applications *subsequent* to the filing of both her initial and formal charges with the USIA (Applications (7)–(13), *supra* ) should also be dismissed. During the period plaintiff's administrative complaint was pending, she continued to seek employment with the USIA; according to her allegations, she made applications and was rejected for three positions in August 1976. Plaintiff also continued to seek employment with the USIA after she filed this suit; according to her allegations, she has applied and been rejected for five positions since March 1977. While plaintiff now contends that all of these rejections were violative of Title VII, plaintiff filed no charge or complaint with the USIA after her formal complaint of June 1976. Moreover, at no time during the pendency of her administrative complaint did plaintiff seek to amend or supplement her administrative complaint to include her additional allegations of discrimination. Thus, at no time prior to the institution of this suit was the USIA notified of plaintiff's contention that it had violated Title VII in rejecting plaintiff's post-April 1976 employment applications. Indeed, it was not until the amended complaint herein was filed on July 7, 1977, that the defendant was given notice of plaintiff's allegations with respect to her employment applications of March–June 1977, and it was not until plaintiff filed her opposition to the instant motion on September 29, 1977, that the defendant was notified of plaintiff's allegation concerning her July 1977 employment application. *See* note 1, *supra.*

30-day time limit in order to enable the complainant to seek relief in a subsequent civil action was "arbitrary, capricious, [and] an abuse of discretion."

**3.** Plaintiff has at no time alleged herein that she was unaware of the 30-day time limit or

that she was prevented from filing within the requisite 30 days; nor has she proffered such an allegation to the USIA pursuant to 5 C.F.R. § 713. 214(a)(4)(i). *Compare Ettinger v. Johnson (II)*, 556 F.2d 692 (3d Cir. 1977).

In the circumstances of this case, the Court holds that plaintiff has failed to exhaust her administrative remedies with respect to her post-April 1976 claims before bringing suit on these claims. By asserting in this suit these post-April 1976 claims, which allege "discrete acts" of discrimination by the USIA, *see* section III(A), *supra*, plaintiff attempts to circumvent entirely the administrative enforcement mechanism with respect to these claims. While the Court recognizes that at least some courts have permitted plaintiffs in *private sector* Title VII suits to seek judicial relief on post-EEOC complaint incidents without filing new administrative charges, *see, e. g*, *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *Held v. Missouri Pacific R. R. Co.*, 373 F.Supp. 996, 1000–02 (S.D.Tex.1974),[4] the Court concludes that such a bypass of the administrative process is particularly inappropriate in suits brought against agencies of the Federal Government. The effect of permitting plaintiff to seek relief on these claims without having first afforded the defendant-agency an opportunity to remedy her charges on the administrative level would undermine "[t]he crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination." *Brown v. GSA*, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976).

For the aforestated reasons, the Court will dismiss plaintiff's claims based on her post-April 1976 employment applications[5] because of her failure to exhaust administrative remedies. In so doing, however, the Court again emphasizes that evidence of discrimination with respect to these post-April 1976 claims may be relevant to plaintiff's proof of discrimination with respect to the remaining claim before the Court. *See United Air Lines, Inc. v. Evans*, 431 U.S. at 558, 97 S.Ct. 1885.

C. *The Court Will Deny Both Defendant's Motion to Dismiss and His Motion For Summary Judgment with Respect to Plaintiff's Claim Arising Out of the April 1976 Employment Application.*

The Court's conclusions in sections III(A) and (B), *supra*, that it must dismiss both plaintiff's pre-April 1976 claims and her post-April 1976 claims leaves but one incident of alleged discrimination in this suit— the denial of plaintiff's request to retake the writing test given by the News Division of VOA and the resultant rejection of her April 1976 employment application. As noted at the outset of this opinion, plaintiff alleges that she was denied the opportunity to retake the writing test and rejected for employment (1) in reprisal for her husband's anti-discrimination activities at the USIA, and (2) on account of sex and/or national origin discrimination. Defendant's motion seeks dismissal of plaintiff's claim of reprisal for her husband's activities in the USIA and summary judgment both on the reprisal claim and on her claim of sex and/or national origin discrimination.

1. *Plaintiff's Allegation of Reprisal For Her Husband's Anti-Discrimination Activities At The USIA States A Claim Upon Which Relief Can Be Granted Under Title VII.*

Defendant contends that 42 U.S.C. § 2000e–3, which proscribes retaliation or reprisals by private employers against their employees for exercising their Title VII rights, does not apply to federal agencies

---

**4.** *But compare Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 n. 3 (5th Cir. 1971) (allegations of post-EEOC complaint incidents distinguished from supplemental legal theories based on pre-complaint incidents).

**5.** The Court would be reluctant to reach this conclusion if the end result of filing additional charges with the agency were a significant delay of plaintiff's timely civil action. However,

no such delay would have resulted if plaintiff had filed timely administrative charges with the USIA after each alleged incident of discrimination, for, as the Court of Appeals made clear in *Grubbs v. Butz*, 169 U.S.App.D.C. 82, 88, 514 F.2d 1323, 1329 (1975), administrative proceedings can proceed *concurrently* with a timely civil action.

and their employees. Rather, he argues that the *only* anti-reprisal protection afforded federal employees is provided by 5 C.F.R. §§ 713.261, 713.262(a) (1977), *see Sperling v. United States*, 515 F.2d 465, 484 (3d Cir. 1975); and the protection provided by these regulations, he contends, is expressly limited to "complainants, their representatives, and [their] witnesses." Defendant also argues that even if § 2000e–3 is applicable to federal agencies and their employees, it does not provide a cause of action to a third party who is subject to discrimination in retaliation for another's protected activities. Thus, according to defendant, neither Title VII nor any CSC regulations afford plaintiff the right to be free from reprisals or harassment by a federal agency which are the result of her husband's anti-discrimination activities.

■ As a threshold matter, there can be no doubt that the defendant is incorrect in his assertion that Congress, in extending the protections of Title VII to federal employees in 1972, did not intend to extend to them the identical anti-reprisal protections afforded private employees by 42 U.S.C. § 2000e–3. The defendant in *Ayon v. Sampson*, 547 F.2d 446 (9th Cir. 1976), raised this identical argument in the district court and then, on appeal, *confessed error.* Upon consideration of this confession of error, and based on its analysis of the statutory language and its legislative history, the Ninth Circuit concluded:

> [I]n enacting § 2000e–16, Congress intended to, and did incorporate into that section the provisions of the Civil Rights Act [§ 2000e–3] prohibiting harassment or retaliation for the exercise of those remedial rights established by the Act. Accordingly, we find that the district court had jurisdiction to consider appellant's charges of retaliation.

547 F.2d at 450. With this conclusion, this Court is in full agreement.

■ It is thus necessary to consider defendant's argument that since plaintiff is not the person whose protected activities are allegedly being impeded by defendant's retaliatory actions, plaintiff fails to state a claim upon which relief can be granted under 42 U.S.C. § 2000e–3. Section 2000e–3 provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

While the language of this section indicates that Congress did not expressly consider the possibility of third-party reprisals—*i. e.*, discrimination against one person because of a friend's or relative's protected activities—the very clear intent of Congress would be undermined by the construction defendant suggests. In enacting section 2000e–3, Congress unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation. Since tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII, the Court must conclude, as has the only other court to consider the issue, *Kornbluh v. Stearns & Foster Co.*, 73 F.R.D. 307, 312 (N.D.Ohio 1976), that section 2000e–3 proscribes the alleged retaliation of which plaintiff complains.

Defendant finally argues that even if defendant's actions that plaintiff alleges are retaliatory are proscribed by the Act, plaintiff's husband, and *not* plaintiff, is the only person who can seek relief on this claim. Such a construction of Title VII would produce absurd and unjust results, for while plaintiff's husband might be in a position to seek injunctive relief to prohibit future reprisals against his spouse, he would certainly not be in a position to seek back pay and/or retroactive promotion based on his spouse's employment denial. Thus, unless plaintiff herself is permitted to seek relief based on the denial of her employment application, the "make whole" purpose of Title VII would be frustrated. Such a result

would contravene the express legislative history of Title VII, *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419–22, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), and would be unacceptable to this Court. Accordingly, the Court holds that plaintiff's allegation of reprisal for her husband's anti-discrimination activities at the USIA states a claim upon which relief can be granted under Title VII.

*2. Material Facts Remain In Dispute With Respect To Plaintiff's Claim Arising Out Of Her April 1976 Employment Application And Summary Judgment Is Therefore Inappropriate.*

Even a cursory glance at the respective statements of material facts and other pleadings filed by the parties demonstrates that material facts remain in dispute with respect to plaintiff's remaining claim. Accordingly, the Court will deny defendant's motion for summary judgment with respect to this remaining claim and will order the parties to complete their discovery with respect thereto within 45 days from the date of this Memorandum Opinion and accompanying Order.[6]

## IV. CONCLUSION

The Court will dismiss plaintiff's claims based on her pre-April 1976 employment applications because of her failure to file timely charges with the USIA. The Court will also dismiss plaintiff's claims based on her post-April 1976 employment applications because of her failure to exhaust her administrative remedies prior to seeking judicial relief thereon. Finally, the Court will deny defendant's motion to dismiss and his alternative motion for summary judgment with respect to plaintiff's remaining claim which is based on her April 1976 employment application to the News Division of VOA.

---

**6.** At this time, the Court also has pending before it plaintiff's motion to compel with respect to her third set of interrogatories. Defendant's response thereto indicates his willingness to answer plaintiff's interrogatories fully after this Court had ruled on the instant dispositive motion. The Court will therefore rely on defendant's good-faith willingness to answer plaintiff's outstanding interrogatories and will deny plaintiff's pending motion to compel without prejudice to permit defendant to comply voluntarily.