Joseph H. SINGH, Plaintiff,

v.

GREEN THUMB LANDSCAPING, INC., a Florida for profit corporation Defendant.

No. 6:03–CV–1559ORL19DAB.

United States District Court, M.D. Florida, Orlando Division.

April 4, 2005.

Barry K. Baker, Barry K. Baker, P.A., Melbourne, FL, for Plaintiff.

Thomas W. Tierney, Rossway, Moore & Taylor, Vero Beach, FL, for Defendant.

Charles M. Reiders, Mediate First, Inc., Orlando, FL, pro se.

**ORDER**

FAWSETT, Chief Judge.

This case comes before the Court on the following:

1. Defendant Green Thumb Landscaping, Inc.'s Motion for Final Summary Judgment. (Doc. No. 17, filed on December 30, 2004). Defendant Green Thumb Landscaping, Inc.'s Memorandum in Support of Motion for Final Summary Judgment. (Doc. No. 18, filed on December 30, 2004).

2. Plaintiff Joseph H. Singh's Memorandum in Opposition to Defendant Green Thumb Landscaping, Inc.'s Motion for Final Summary judgment. (Doc. No. 26, filed on January 13, 2005).

**Background**

Green Thumb Landscaping, Inc. ("Green Thumb") is owned by Mark Wadsworth. (Doc. No. 21, "Mark Wadsworth Deposition," p. 7). Joseph Singh and his wife, Sharon Major, worked for Green Thumb as independent contractors for twelve years. (*Id.* at 16).

In January, February, or March of 2002, Wadsworth contacted Singh about becoming an employee of Green Thumb rather than doing work for Green Thumb as an independent contractor. (*Id.* at 24). Wadsworth testified that Singh was experiencing problems with his trucks and that Singh did not have the money to repair them. (*Id.* at 24). Wadsworth did not have a truck for Singh to drive, so he initially hired Singh as a mechanic until he bought dump trucks. (Doc. No. 19, "Joseph Singh Deposition," p. 28).

Wadsworth purchased two dump trucks one month after Singh joined Green Thumb as an employee. (*Id.*) Wadsworth told Singh that he would drive one truck and asked if Singh's wife, Sharon Major, would drive the other. (*Id.* at 29). Major agreed to drive the dump truck full time. (*Id.*) Singh drove the dump truck when there was adequate dump truck work and worked as a mechanic on the weekends

and whenever the dump truck work was slow. (*Id.* at 28, 29).

Major testified that she complained to Wadsworth several times regarding her treatment by another employee, Gary Ashmore. (Doc. No. 20, "Sharon Major Deposition," p. 109). Major told Wadsworth that there was a lot of discrimination occurring at Green Thumb. (*Id.*) Singh testified that Wadsworth asked Major to note all the discriminatory conduct that was taking place at Green Thumb. (Doc. No. 19, "Joseph Singh Deposition," p. 65).

Singh stated that he told Wadsworth that Ashmore was harassing his wife, although he does not recall the dates or times of those meetings. (Doc. No. 26, Ex. B, "Joseph Singh Deposition," pp. 83–84). For instance, Singh told Wadsworth that he had discovered that Major was filing a charge with the Equal Employment Opportunity Commission and Florida Commission on Human Relations. (*Id.* at 89). Wadsworth told Singh that he would hire Major back if she would drop her charges. (*Id.*)

On September 25, 2002, Major wrote a letter to Wadsworth explaining the conduct she had experienced at the hands of Ashmore and how she felt badly about the things he had said to her.[1] (*Id.* at 65.) Major brought the letter to Wadsworth the next morning accompanied by Singh. (*Id.*) Wadsworth then called Ashmore into his office for a meeting. (*Id.*) Singh testified that he told Wadsworth in front of Ashmore that Ashmore did not want a woman driver. (*Id.*) Singh stated that he told Wadsworth: "He's [referring to Ashmore] giving her a really hard time. He's talking down to her. He's just making her life a living hell." (*Id.*) Singh also told

Wadsworth that Ashmore said that "the woman belonged home baking cookies" and could not drive. (Doc. No. 26, Ex. B, "Joseph Singh Deposition," p. 66).

Major testified that Wadsworth asked Singh to go to his truck to retrieve several tickets for the day's work. (Doc. No. 20, "Sharon Major Deposition," p. 95). After Singh left the room, Wadsworth stated that it was easier for him to let Major and Singh go than to deal with the situation. (*Id.*) Major stated that Wadsworth said: "I cannot deal with this. I need my work done. I don't want complaining." (*Id.*) When Singh returned to the office, Major testified that Wadsworth told Singh that he was being let go. (*Id.*)

Singh testified that Wadsworth complimented him on his job performance and stated: "I'm going to let both of you go, there's too much tension and this is, it's easier for me to let you guys go." (Doc. No. 26, Ex. B, "Joseph Singh Deposition," p. 71).

Wadsworth's version of the events differs from Singh's and Major's version. Wadsworth testified that he told Major that she was dependable but that he had been in business for many years and never had the kind of tension that she had created in the workplace. (Doc. No. 26, Ex. A, "Mark Wadsworth Deposition," p. 117). Wadsworth testified that Singh then said: "If you're going to fire her, then you're firing me." (*Id.*) Wadsworth testified that he told Singh that he had no problem with Singh and wanted Singh to keep his job, but Singh stated: "If she's going, I'm going." (*Id.*) Singh told Wadsworth that he no longer wanted to work for Green Thumb because Wadsworth had terminat-

---

1. In the unauthenticated letter, Major writes that Ashmore had a problem with her. (Doc. No. 26, Ex. H, "Major Discrimination Letter"). She states that his harassment reached a boiling point when he yelled at her. (*Id.*) Ashmore told her that she was a bad driver and that she should not be at Green Thumb because Major did not know what she was doing. (*Id.*)

ed his wife's employment. (Doc. No. 26, Ex. C, "Interrogatories," p. 2).

On October 30, 2003, Plaintiff Joseph Singh filed a lawsuit against Defendant Green Thumb Landscaping, Inc. alleging retaliation in violation of Title VII and the Florida Civil Rights Act. (Doc. No. 1). In Count I, Plaintiff alleged that Defendant terminated Plaintiff's employment in retaliation for his close association with a person making complaints of discrimination. (*Id.* at ¶ 18). In Count II, Plaintiff alleged that Defendant's retaliatory discharge of Plaintiff because of his close association with a person making complaints of gender discrimination was in direct violation of the Florida Civil Rights Act. (*Id.* at ¶ 29).

Defendant now moves for summary judgment, arguing that Plaintiff cannot establish that he engaged in protected activity under Title VII. Defendant also contends that the Eleventh Circuit has not addressed whether a person who has suffered an adverse employment action based solely on a family member's protected activity may bring a Title VII retaliation claim and that the plain language of Title VII precludes Defendant's liability in this case. Plaintiff counters that existing precedent within the Eleventh Circuit recognizes close association third party retaliation claims. In the alternative, Plaintiff argues that the record reflects that he engaged in protected activity under Title VII's anti-retaliation clause.

This Order analyzes Defendant's motion for summary judgment.

### Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has satisfied the burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir.1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the Court must not grant summary judgment. *Id.* (citation omitted)

### Analysis

■■■ To recover for retaliation, Plaintiff does not need to prove the underlying claim of discrimination so long as he had a reasonable good faith belief that the discrimination existed.[2] *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 586 (11th Cir. 2000) (quoting *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994)).

---

2. Because the Florida Civil Rights Act was patterned after Title VII and Florida courts have applied decisions relating to Title VII when analyzing claims under the Florida Civil Rights Act, the Court's analysis of Plaintiff's Title VII claim also applies to the claim under the Florida Civil Rights Act. *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998).

In order to establish a *prima facie* case of retaliation, Plaintiff must prove the following elements: (1) he participated in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision.[3] *Gupta*, 212 F.3d at 587. Once Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged action. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 n. 6 (11th Cir.2000). If Defendant does so, Plaintiff must present evidence that the proffered reason is a pretext. *Id.*

Defendant's motion for summary judgment focuses on whether Plaintiff participated in an activity protected by Title VII and whether Defendant's reason for termination was a pretext.

Defendant contends that Plaintiff is unable to prove the first element of his *prima facie* case, arguing that Plaintiff does not have a cause of action based solely on his close association with his wife who engaged in protected activity. Defendant claims that the Eleventh Circuit has not addressed whether a person who has suffered an adverse employment action based solely on a family member's protected activity may bring a Title VII retaliation claim. Defendant argues that the two district courts in the Eleventh Circuit that have been presented with this issue have found that the plaintiffs failed to establish a *prima facie* case of retaliation. Defendant cites *Miller v. Bed, Bath & Beyond,*

*Inc.*, 185 F.Supp.2d 1253, 1273 (N.D.Ala. 2002), and *Thomas v. Ford Motor Co.*, 2000 WL 951733, 2000 U.S. Dist. Lexis 11460 (N.D.Ga.2000), in support of its argument.

In *Miller,* the plaintiff alleged that she suffered an adverse employment action when the defendant terminated the employment of plaintiff's daughter after the plaintiff filed her EEOC charge. 185 F.Supp.2d at 1273. The defendant argued that an adverse action taken against the plaintiff's daughter did not constitute an adverse action for which the plaintiff could recover. *Id.* The trial court concluded that an injury done to a family member does not constitute an adverse employment action and also found that the Eleventh Circuit had not specifically addressed the issue presented in that case. *Id.* at 1274.

In *Thomas,* the trial court noted that it was not able to find any Eleventh Circuit case which analyzed the issue of whether a close relative who works with an individual who engages in protected activity is entitled to bring a retaliation claim for termination of employment based on the family member's protected activity. *Thomas v. Ford Motor Co.*, 2000 WL 951733, 2000 U.S. Dist Lexis. 11460, *33 (N.D.Ga.2000). However, the trial court stated that courts which have analyzed similar issues have not found any statutory support for such claims. *Id.*

Plaintiff argues that the Eleventh Circuit has found that a person has a cause of action for retaliation if that person has suffered an adverse employment action

---

**3.** The anti-retaliation clause of Title VII states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e–3(a).

based solely on a family member's protected activity. Plaintiff cites *Wu v. Thomas*, 863 F.2d 1543 (11th Cir.1989), in support of his argument. In that case, the husband and wife were both faculty members at the University of Alabama. *Id.* at 1545. The wife filed a lawsuit against the university seeking relief under the Equal Pay Act and Title VII of the Civil Rights Act. *Id.* The husband claimed that subsequent to his wife's filing of her EEOC charge, he was removed from the chairmanship of his department. *Id.* Both husband and wife filed suit, alleging that the defendants violated Title VII by retaliating against them. *Id.* at 1546. The district court converted a motion to dismiss into a motion for summary judgment and granted summary judgment in favor of the defendant. *Id.* at 1546. The Eleventh Circuit reversed. *Id.* at 1546–50. However, in its written opinion the Eleventh Circuit did not address the issue raised in the instant case, that is whether Plaintiff has a cause of action for retaliation based solely on his close association with his wife who engaged in protected activity.[4] The appellate court's discussion of the facts in *Wu* does not reflect whether the husband participated in complaining to the university regarding the university's treatment of his wife.

The Court has obtained a copy of the amended complaint and summary judgment Order filed in the District Court in the Northern District of Alabama in the *Wu* case. In the amended complaint, the plaintiffs allege that Dr. H.K. Wu testified at the trial of his wife's sex discrimination claims in March 1986, before certain acts of discrimination against Dr. H.K. Wu oc-

curred, and that thereafter defendant Formbry invited him to leave his employment at the University of Alabama. (Wu Amended Complaint, CV 87–G–0501–W, filed on December 6, 1989, ¶ 4). The plaintiffs contended that Mrs. Wu filed a claim with the EEOC on behalf of herself and her husband. (*Id.* at p. 1). The plaintiffs also alleged that since Kathleen Wu had complained of sex discrimination, the defendants consistently gave Dr. H.K. Wu lower salary increases than the other members of the department and effectively denied him the opportunity to teach during the summer term. (*Id.* at ¶ 4).

The Court has also examined the trial court's Order granting summary judgment in the *Wu* case which was subsequently reversed by the Eleventh Circuit. The Order does not discuss whether Dr. H.K. Wu complained to the defendants or whether his complaint was based entirely on his close association with his wife. ("Final Order Granting Summary Judgment," CV 87–G–0501–W, filed on October 20, 1987). Thus, the issue of whether a plaintiff has a cause of action for retaliation based solely on the close association with another person who engaged in protected activity was not analyzed in the *Wu* case, and Plaintiff's argument that *Wu* stands for the proposition that he had a cause of action based solely on the close association with his wife does not appear to be supported by this case.

Plaintiff cites a number of cases in support of his position that Title VII recognizes a cause of action based on close association third party retaliation claims, including *Equal Employment Opportunity*

---

4. The Eleventh Circuit examined four independent grounds for the district court's award of summary judgment. The appellate court analyzed whether the plaintiffs had complied with the jurisdictional prerequisites to suit pursuant to Title VII, whether the husband's suit was barred by the doctrines of res judicata and collateral estoppel, whether

the plaintiffs had alleged or proved injury to a property or liberty interest protected by the Fourteenth Amendment, and whether the defendant officials were protected by the Eleventh Amendment and the doctrine of sovereign immunity. *Wu v. Thomas*, 863 F.2d 1543, 1546–50 (11th Cir.1989).

*Commission v. Ohio Edison Co.*, 7 F.3d 541, 544 (6th Cir.1993) ("We thus reject the conclusion of the district court in the present case that third parties, who have not actually engaged in protected activities themselves, can never sue under 42 U.S.C. § 2000e–3(a)"), *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir.1996) (holding that "assisting another employee with his . . . discrimination claim, as well as other endeavors to obtain the employer's compliance with Title VII, is protected 'opposition conduct'"), *McKenzie v. Atlantic Richfield Co.*, 906 F.Supp. 572, 575 (D.Colo.1995) ("the anti-reprisal provision of Title VII precludes an employer from discriminating against an individual because that person's spouse has engaged in protected activities"), *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F.Supp. 1108, 1118 (W.D.N.Y.1996) (finding that the plaintiff had stated a cause of action for retaliation under Title VII when plaintiff alleged that a close relative had engaged in protected activity, his employer took a disadvantageous employment action against him, and the time frame indicated a causal connection); *Equal Employment Opportunity Commission v. Nalbandian Sales, Inc.*, 36 F.Supp.2d 1206, 1210 (E.D.Ca. 1998) ("[a] construction that requires standing only where the employee himself has participated in activity giving rise to unlawful retaliation would leave all the other retaliated against employees without a remedy"), *DeMedina v. Reinhardt*, 444 F.Supp. 573, 580 (D.D.C.1978) ("[s]ince tolerance of third-party reprisals would no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII, the Court must conclude . . . that section 2000e–3 proscribes the alleged retaliation of which plaintiff complains); *Mandia v. ARCO Chemical Co.*, 618 F.Supp. 1248, 1250 (W.D.Pa.1985) (concluding that Plaintiff met the requirements of the participation element of Title VII because the evidence reflected that he participated and supported his wife in the filing of the EEOC charge), and *Thurman v. Robertshaw Control Co.*, 869 F.Supp. 934, 941 (N.D.Ga. 1994) ("[i]n a case of an alleged retaliation for participation in a protected activity by a close relative who is a co-employee, the first element of the prima facie case is modified to require the plaintiff to show that the relative was engaged in statutorily protected expression").

The Court's independent research has not produced any Eleventh Circuit case directly analyzing whether Plaintiff would have a cause of action for retaliation based solely on his close association with his wife who engaged in protected activity.

On the other hand, a number of Circuit Courts have held that the protected activity of one family member does not create automatic standing for another family member to maintain a claim of retaliation under Title VII. *See, e.g., Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561, 564 (3d Cir.2002) ("by referring to 'such individual,' the plain text of these statutes clearly prohibits only retaliation against the actual person who engaged in protected activity."); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir.1998) ("a plaintiff bringing a retaliation claim under Title VII must establish that she personally engaged in the protected conduct"); *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1227 (5th Cir.1996) (a plaintiff "does not have automatic standing to sue for retaliation . . . simply because his spouse has engaged in protected activity").

Plaintiff urges the Court to go beyond the literal language of Title VII's anti-retaliation provision and cites *Bailey v. USX Corp.*, 850 F.2d 1506 (11th Cir.1988), *DeMedina v. Reinhardt*, 444 F.Supp. 573 (D.D.C.1978), and the EEOC Compliance Manual in support of his argument.

In *Bailey*, the Eleventh Circuit stated that the plain-meaning rule should not be

applied to produce a result that is inconsistent with the policy reasons underlying the statute. 850 F.2d at 1509. In holding that former employees could sue under Title VII, the appellate court reasoned that a strict interpretation of the word "employee" to exclude former employees would undercut the remedial provisions behind the statute. *Id.* at 1509–10.

In *DeMedina,* the trial court in the District of Columbia Circuit reasoned that while the language of 42 U.S.C. section 2000e–3 indicates that Congress did not expressly consider the possibility of discrimination against one person because of a friend's or relative's protected activities, in enacting that section Congress intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation. 444 F.Supp. at 580. Thus, the trial court concluded that a plain language interpretation of Title VII would produce "absurd and unjust results." *Id.*

Finally, Plaintiff quotes section 8–II of the EEOC Compliance Manual in support of his argument that the Court should go beyond the literal language of Title VII's anti-retaliation provision:

"The retaliation provisions of Title VII, the ADEA, the EPA, and the ADA prohibit retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights. For example, it would be unlawful for a respondent to retaliate against an employee because his or her spouse, who is also an employee, filed an EEOC charge. Both spouses, in such circumstances, could bring retaliation claims."

EEOC Compliance Manual, § 8–II, December 5, 2002.

The Court will first examine the applicability of the EEOC Compliance Manual to the facts of this case. Next, the Court will determine whether *Bailey* and *DeMedina* support the creation of a cause of action not directly stated in the statute.

 The Court does not find the EEOC Compliance Manual to be dispositive on the issue of whether the Court should create a cause of action for retaliation based solely on the close association between a plaintiff and another employee who engages in protected activity. While the EEOC's construction of Title VII is entitled to deference, the level of deference ultimately afforded will "depend on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

 The EEOC's interpretation of Title VII's anti-retaliation provision is not based on a thorough consideration of the issues presented to the Court. The EEOC Compliance Manual simply cites *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 544 (6th Cir.1993), and *Thurman v. Robertshaw Control Co.,* 869 F.Supp. 934, 941 (N.D.Ga.1994), in support of its conclusion that Title VII's anti-retaliation clause supports a close association third party retaliation claim. This provision of the Manual is entirely lacking in the extensive analysis and thoroughness necessary to be entitled to substantial deference by the Court.[5] Ulti-

---

**5.** In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court held that a court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute. When the Court is confronted with an interpretation of the law contained in an opinion letter or an interpretation that lacks formal adjudication or notice-and-comment rulemaking, such interpretations are entitled

mately, the responsibility is with the Court, not with an administrative body, to interpret the provisions of Title VII in accordance with the explicit legislative enactments set out by the Congress. *See Skidmore*, 323 U.S. at 137, 65 S.Ct. 161. Because the plain and unambiguous language of Title VII differs from this provision of the EEOC Compliance Manual and because the Compliance Manual is not the product of adjudication or notice-and-comment rulemaking, the Court finds that this provision of the Compliance Manual is not persuasive on the issue of whether Plaintiff has a cause of action based solely on his close association with his wife who engaged in protected activity.

 Plaintiff's argument that *Bailey* and *DeMedina* support his contention that the Court should go beyond the plain language of Title VII is not well taken. First, *Bailey* does not support the proposition that courts should always go beyond the plain meaning of the statute when analyzing the anti-retaliation provision of Title VII. Plaintiff reads *Bailey* too broadly. Second, *DeMedina*, a trial court case in the District of Columbia Circuit, did not consider the broader policy implications of courts creating causes of action when the plain language of the statute fails to support such an interpretation. While allowing employers to retaliate via friends and family would appear to be in significant tension with the overall purpose of the anti-retaliation provision, which is intended to promote reporting of discrimination claims, prohibiting such claims is not "an absurd outcome that contravenes the clearly expressed intent of the legislature." *Fogleman v. Mercy Hospital*, 283 F.3d 561, 569 (3d Cir.2002). Congress may have thought that the relatives and friends who are at risk for retaliation will have participated in some manner in a co-worker's charge of discrimination. *Id.* Furthermore, Congress, in enacting the anti-retaliation provision, may have feared that expanding the class of potential anti-discrimination plaintiffs beyond those who have engaged in protected activity would lead to frivolous law suits and would impinge on an employer's ability to fire at-will employees. *Id.* at 570. Given the fact that a conflict between the plain meaning of a statute and general policy objectives should be resolved in favor of the statute's plain meaning, the Court rejects Defendant's argument that the Court should go beyond the plain meaning of the anti-retaliation provision and imply a cause of action based solely on the close association between a plaintiff and the party who engaged in the protected activity. The preference in favor of following the plain meaning of the statute is based on the constitutional separation of powers. Congress makes the law, and the judiciary interprets it. *Id.* at 569. Therefore, the Court finds that Plaintiff does not have a cause of action for retaliation based solely on his close association with his wife who engaged in protected activity.

 The next issue that the Court must consider is whether Plaintiff engaged in

---

to respect but only to the extent that the interpretation has the power to persuade. *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

Statements contained in the EEOC Compliance Manual are neither the result of an adjudication nor the product of notice-and-comment rulemaking. *Noviello v. City of Boston*, 398 F.3d 76, 90 n. 3 (1st Cir.2005). The EEOC Compliance Manual is not entitled to significant deference. *Ebbert v. Daimler-Chrysler Corp.*, 319 F.3d 103, 115 (3d Cir. 2003) ("An internal agency manual is not subject to the kind of deliberateness or thoroughness that gives rise to significant deference."); *Villescas v. Abraham*, 311 F.3d 1253, 1261 (10th Cir.2002) ("Such 'guidance' in a manual is not entitled to any special deference by our court.").

protected activity under Title VII. Defendant argues that Plaintiff was merely helping his wife relay her complaint to Defendant's president and that such an isolated remark does not constitute protected activity under Title VII.[6] From the record, it is clear that Plaintiff not only opposed Defendant's employment practices at the termination meeting, but also opposed Ashmore's treatment of Major at other times during Plaintiff's employment.[7]

The plain language of Title VII states that it shall be unlawful for an employer to discriminate against an employee because he has opposed any unlawful employment practice. 42 U.S.C. A. § 2000e–3(a). Plaintiff's comments to Wadsworth may demonstrate that Plaintiff opposed Ashmore's treatment of Major because he believed that Ashmore was sexually harassing Major by creating a hostile work environment. Hostile work environment sexual harassment is an unlawful employment practice under Title VII. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir.1989). While Plaintiff is opposing sexual harassment that his wife experienced rather than harassment that he experienced, the plain language of Title VII's anti-retaliation clause protects Plaintiff in his opposition to discrimination suffered by his wife. *See Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1227 (5th Cir.

1996) (noting that the plain language of the anti-retaliation clause under the Age Discrimination in Employment Act would protect an employee's friends and coworkers who had participated in some manner in a co-worker's charge of discrimination). Therefore, the Court finds that Plaintiff's comments to Wadsworth demonstrate that Plaintiff engaged in protected activity under Title VII's anti-retaliation clause.

To be considered an adverse employment action for the purpose of Title VII's anti-retaliation provision, the action must be an ultimate employment decision or must meet a threshold level of substantiality. *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir.2001). Ultimate employment decisions include termination, failure to hire, or demotion. *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998). Because Plaintiff testified that Defendant terminated Plaintiff's employment, Plaintiff has established the adverse employment action element of his *prima facie* case.

The third element of the retaliation claim requires Plaintiff to establish a causal connection between the protected activity and the adverse action. To demonstrate a causal connection, Plaintiff must show that the decision-makers were

6. Defendant cites *Clark County School District v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), in support of its argument. *Breeden* is not applicable to the instant case. In *Breeden*, the plaintiff filed a retaliation claim against her defendant employer, alleging that she was terminated for complaining to her supervisor that her coworkers reiterated sexual comments contained in job applications that the plaintiff and her coworkers reviewed. *Id.* at 269, 121 S.Ct. 1508. The Supreme Court found that no reasonable person could have believed that such a single, isolated incident violated Title VII's standards, reasoning that the plaintiff's job required her to review sexually explicit material

in order to evaluate applicants. *Id.* at 271, 121 S.Ct. 1508. Therefore, *Breeden* does not support Defendant's argument that Plaintiff did not engage in protected activity under Title VII.

7. The deposition of Plaintiff was taken after the complaint in this case was filed, and the testimony of his actions to oppose the discrimination of which his wife complained were not specifically referenced in the complaint. However, the principles of notice pleading apply in the federal court, and the efforts of Mr. Singh to assist his wife fall within the purview of the allegations of the complaint.

aware of the protected conduct and that "there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir.1999). Because Plaintiff testified that he complained to Wadsworth regarding the sexual harassment that he believed his wife was experiencing and because there was a close temporal proximity between Plaintiff's complaint to Wadsworth and Defendant's termination of Plaintiff's employment, the Court finds that the causal connection element has been satisfied.

Because Plaintiff has established a *prima facie* case of retaliation, the burden of production shifts to Defendant to articulate a legitimate reason for the adverse employment action. *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1196 (11th Cir.1997). If Defendant proffers a legitimate reason for the adverse employment action, the burden of production then shifts back to Plaintiff to raise a genuine factual issue as to whether Defendant's proffered reason is a pretext. *Id.*

Defendant argues that even if Plaintiff establishes a *prima facie* case for retaliation, Defendant has legitimate, nondiscriminatory reasons for its actions. Defendant's president, Wadsworth, informed Plaintiff that Plaintiff was being let go because there was too much tension in the workplace. Wadsworth stated that it was easier for him to let Plaintiff and his wife go then to deal with the situation. Defendant argues that these comments demonstrate that there was no testimony that Plaintiff and his wife were being discharged because of complaints of discrimination. Defendant contends that Wadsworth needed to get his work done and apparently believed that the tension being created by the presence of Plaintiff and his wife was interfering with that goal.

Considering the evidence in the light most favorable to Plaintiff, a jury could find that Wadsworth, by his comments to Plaintiff, terminated Plaintiff's employment for creating tension in the workplace and that this tension was caused by Plaintiff's complaints to Wadsworth regarding discrimination against his wife by another employee. Thus, a reasonable person could conclude that Defendant terminated Plaintiff's employment for Plaintiff's complaints of discrimination. The Court cannot choose between competing versions of the facts and inferences drawn from them. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact which could permit a reasonable jury to find in favor of Plaintiff.

### Conclusion

Based on the foregoing, Defendant Green Thumb Landscaping, Inc.'s Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Defendant's Motion for Summary Judgment is **GRANTED** on Plaintiff's Title VII and Florida Civil Rights Act claims that he has a cause of action for retaliation based solely on his close association with his wife who engaged in protected activity. Summary Judgment is **DENIED** on Plaintiff's claim for retaliation based on Plaintiff's own opposition to Defendant's unlawful employment practices under Title VII and the Florida Civil Rights Act.

**DONE** and **ORDERED**.